UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JEREMY PARADISE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 10-11678-GAO |
| ) | |
| EAGLE CREEK ) | |
| SOFTWARE SERVICES ) | |
| and KENNETH BEHRENDT) | |
| ) | |
| Defendants. ) | |

REPORT AND RECOMMENDATION ON MOTION TO DISMISS

June 16, 2011

SOROKIN, M.J.

Pending before the Court are the motions of both defendants to dismiss or in the alternative transfer this case to the district of Minnesota. For the reasons explained below, I recommend allowing both motions insofar as they request a transfer on the ground that the parties formed a binding agreement that includes a forum selection clause designating Minnesota as the exclusive forum for all litigation.

I. Facts

On August 15, 2007, Eagle Creek made a written offer of employment to Paradise. Docket # 4 at ¶ 21. The offer letter set forth various terms of the proposed employment and stated that "[i]t is also a condition of employment [that] the Employment Agreement (see attached) is signed by you prior to joining Eagle Creek." Docket # 4-1 at 3. Paradise accepted

1

this offer, however, on the record before the court, at the time Paradise accepted the offer he had not received a copy of the attachment. Docket # 4 at ¶ 21; Docket 29 at ¶ 3.

In early September, Paradise began performing sales work on some account(s) for Eagle Creek. Docket # 4 at ¶ 24. At this point, he had not become a formal employee of Eagle Creek in the sense that he was not enrolled in the 401(k) plan, etc. See, e.g. Docket # 29 at ¶ 7. He commenced formal employment on October 1st. Docket # 22-1 at 4.

On September 26, 2007, Paradise received an email from the recruiter that made the above noted offer of employment to Paradise on behalf of Eagle Creek. Docket # 29 at ¶ 3. The recruiter stated: "I apologize about not sending this with the other mail and about the inconvenience. Please sign and fax back to me when you can at 952-230-2099." Docket # 29-1 at 1. The "this" was a document attached to the email titled "Employment, Non-Competition and Confidentiality Agreement." Docket # 29 at ¶ 3 ("ENCCA"). There is no doubt that Paradise received this document as he avers he received it along with the email on September 26, 2007 in his affidavit. Id. The document attached to the email is the document referenced as an attachment in the August 15, 2007 offer letter, but not actually attached to that document.[1]

On September 28, 2007, Eagle Creek received from Paradise a fax copy of, at least, the first page of ENCCA. Docket # 22-1 at 6. Eagle Creek received this document along with other pre-employment documents Paradise provided (e.g. acceptance of company credit card, etc). Eagle Creek's files also contain a new hire document checklist purporting to indicate that it

---

[1] Eagle Creek's new hire checklist includes a box for verifying receipt of a signed ENCCA from a prospective employee. The follow-up email that Paradise submits sought his signature on this document. In the face of this undisputed evidence and no other material contrary evidence, the ENCCA is the document that was intended to be attached to the August 15, 2007 letter.

2

received both the first and last page of the ENCCA on "9-28.," however, Eagle Creek has not produced a copy of a signature page for this document bearing Paradise's signature.[2] Docket # 22-1 at 4.

While Paradise's Amended Complaint alleges that Paradise could not recall signing the ENCCA, in his subsequent affidavit, he affirms under oath that he now is "quite certain that I did not sign" the ENCCA. Docket # 29 at ¶ 4. There is no dispute that he faxed other pre-employment documents on September 28, 2007 to Eagle Creek. In his affidavit, he is silent regarding the single page Eagle Creek possesses though he does say his practice when signing a document is to return the entire document, not simply the signature page. Docket # 29 at ¶ 5. For purposes of the pending motions, Paradise did not sign the ENCCA.[3]

On October 1, 2007, Paradise commenced formal employment with Eagle Creek.

The ENCCA contains two provisions material to the pending motions. The arbitration clause of the ENCCA provides, in relevant part, that:

> [A]ny claims or disputes of any nature between or among the parties hereto arising from or related to this Agreement or the performance, breach, termination, expiration, application or meaning of this Agreement or any matter related to the Employee's employment and the termination of that employment by the Company shall be resolved exclusively by arbitration conducted in Minneapolis, Minnesota . . . No punitive, special

---

[2] The parties agreed that the Court could consider all of the exhibits with respect to both motions pending before the Court.

[3] A former Eagle Creek human resources employee stated that at the relevant time in late September 2007, she assigned Paradise an employee number and mailed out a packet to start the new hire process, only after she received the signed ENCCA form from Paradise (and several other documents). Docket # 22-1 at 5. This former employee says she received the first and last page of the ENCCA and that it had the signatures of both Paradise and the recruiter (Tony Carter). Id. She states that she saw the signature of Paradise on the ENCCA Id. The former employee, however, did not make her statements under oath and Eagle Creek has not produced a copy of the signature page.

or exemplary damages shall be sought by a party or awardable by the arbitrator(s).

Docket #4-2 at ¶ 12.

The agreement also contains a forum selection clause providing that "[a]ny litigation between Employee and Employer arising from this Agreement or from Employee's employment with Employer, shall be brought in a court of competent jurisdiction within the State of Minnesota, and Employee and Employer hereby consent to the personal jurisdiction of said courts." Id. at ¶ 14.

The record contains no evidence of Paradise ever rejecting or repudiating any or all of the provisions of the ENCCA. The record also contains no evidence of Eagle Creek ever mentioning or discussing the arbitration clause contained within the ENCCA and Paradise affirms Eagle Creek did not. Plainly, Paradise did not read the ENCCA prior to litigation, as he states he "was not aware of the arbitration provision," although he concedes he received the ENCCA on September 26, 2007. Docket # 29 at ¶¶ 3, 8.

In 2010, Eagle Creek terminated Paradise. Docket # 4 at ¶ 24. He has sued in this Court asserting a variety of common law and statutory claims against both Eagle Creek and its President. Both defendants move to dismiss or in the alternative transfer to the district court in Minnesota.

II.     DISCUSSION

In pressing their motion, both parties have presented materials outside the pleadings. See Docket # 22-1; Docket # 29. "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for

summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). The decision whether to exclude the materials is within the court's discretion. Trans-Spec Truck Serv. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir.2008).

Under the circumstances, the Court will consider all of the materials submitted by the parties, as neither party objected to this procedure at the hearing. Accordingly, the Court converts the motion into one for summary judgment pursuant to Fed. R. Civ. P. 12(d).

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Once a party has properly supported its motion for summary judgment, the burden shifts to the non-moving party, who "may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing there is a genuine issue for trial." Barbour v. Dynamics Research Corp., 63 F.3d 32, 37 (1st Cir.1995)(quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986)). Moreover, the Court is "obliged to view the record in the light most favorable to the nonmoving party, and to draw all reasonable inferences in the nonmoving party's favor." LeBlanc v. Great American Ins. Co., 6 F.3d 836, 841 (1st Cir.1993). Even so, the Court is to ignore "conclusory allegations, improbable inferences, and unsupported speculation." Sullivan v. City of Springfield, 561 F.3d 7, 14 (1st Cir.2009).

    1.    The Parties Formed an Agreement to Arbitrate

Federal law favors arbitration as a means to resolve disputes. 9 U.S.C. § 2. To preclude litigation of a matter in favor of arbitration, the moving party must demonstrate that a "valid agreement to arbitrate exists, that it is entitled to invoke the arbitration clause, that the non-

5

moving party is bound by the arbitration clause, and that the claim asserted comes within the clause's scope." Campbell v. General Dynamics Corp., 407 F.3d 546, 552 (1st Cir.2005) (citing InterGen N.V. v. Grina, 344 F.3d 134, 142 (1st Cir.2003)).

Arbitration is a "matter of contract, and for the most part, general principles of state contract law control the determination of whether a valid agreement to arbitrate exists." Id. (quoting AT & T Techs., Inc. v. Communications Workers, 475 U.S. 643, 648 (1986) and citing Perry v. Thomas, 482 U.S. 483 (1987)). "In Massachusetts, for a contract such as an arbitration agreement to be binding in the context of an at-will employment relationship, its acceptance by the employee need not be express and in writing."[4] Ellerbee v. GameStop, Inc., 604 F. Supp. 2d. 349, 354 (D. Mass.2009) (citing O'Brien v. New England Telephone Co., 664 N.E.2d. 843 (1996)). Rather, continued employment can constitute adequate consideration for the contract. Id. While express assent in writing is not required, the employer must establish that the employee "manifested assent" to the arbitration terms or, that the employer "called special attention to the manual" regarding arbitration. Id. (quoting O'Brien, 664 N.E.2d. at 693).

The undisputed evidence before the Court establishes that Paradise manifested his assent to the ENCCA. Eagle Creek made its offer of employment to him expressly contingent upon the the terms of the offer letter and the ENCCA; Paradise accepted the offer even though the offer letter failed to include a copy of the ENCCA as an attachment. Docket #4 at ¶ 21. Before

---

[4] Eagle Creek asserts state law applies to this question, although it has not addressed the question of whether to apply Massachusetts or Minnesota law. Docket # 11-1 at 4-5. Paradise took the position that Massachusetts law applied. Docket # 16 at 9 n. 2; Docket # 27 at 7 n. 2. In light of these positions and that Paradise sued in Massachusetts under Massachusetts law, I have applied Massachusetts law in the absence of a contrary suggestion from the parties or any indication that Minnesota law differs from Massachusetts law on this issue..

Paradise officially commenced his employment, he did receive the ENCCA. At approximately the same time, he also received a variety of relatively standard pre-employment forms. He proceeded to complete the pre-employment forms and then commence formal employment with Eagle Creek. While he failed to sign the ENCCA, at no time did he reject or repudiate its terms. To the contrary, he manifested his acceptance by commencing employment on all the terms proposed by Eagle Creek (other than the term requiring his signature on the ENCCA, something, on the present record, Eagle Creek, accepted by commencing Paradise's employment). Thus, by the time Paradise became a formal employee on October 1, 2007, a "reasonably prudent employee would have known that a binding arbitration agreement existed." Ellerbee, 604 F. Supp. 2d. at 355. The fact that Paradise "did not read [the arbitration provision] . . . would not save [him]." Rosenberg v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 170 F.3d 1, 21 n. 17 (1st Cir.1999).

Paradise advances several arguments in opposition to finding that the parties agreement includes the ENCCA (or that the agreement formed could encompass an arbitration provision). First, he cites Ellerbee where the employer orally notified the employee, in person, of the "binding nature of the arbitration agreement." Ellerbee, 604 F.Supp.2d at 355. No such oral notification occurred in this case. However, Paradise received the plain and clear and plainly notification of the arbitration provision in the form of the written ENCCA. The binding and significant nature of the document was made clear to Paradise – the offer of employment was contingent upon the ENCCA's terms and he received the document in the course of the pre-employment process. In these circumstances, the absence of an oral notification of the arbitration provision is not a material basis to distinguish this case from Ellerbee. Moreover, the nature,

7

context and specificity of the communications in this case differ fundamentally from the mass email sent in the Campbell case.[5] Indeed, the title of the document "Employment, Non-Competition and Confidentiality Agreement," further highlighted the important and binding nature of the document.

Second, Paradise contends, and the Court accepts, that he did not sign the ENCCA. Thus, he argues this failure precludes the enforcement against him of the document's terms. He is incorrect. The absence of his signature on the document precludes a finding of express agreement to the document's terms, however, express agreement is not required. Ellerbee, 604 F.Supp.2d at 354. Paradise manifested his assent by his conduct.

Accordingly, the ENCCA including the arbitration clause therein, binds Paradise.

2.      This is Not the Proper Forum for Resolution of Paradise' Alternative Arguments

Anticipating the possibility of the Court recommending that the ENCCA binds Paradise, he has advanced a number of arguments in opposition to the request to dismiss the case in favor of arbitration. In particular, he contends that his claim under the Massachusetts Wage Act, G.L. c. 149, §§ 148, 150, which includes relief of multiple damages and attorney's fees, is not subject to arbitration because the arbitration clause provides that "[n]o punitive, special or exemplary damages shall be sought by a party or awardable by the arbitrator(s)." Docket # 4-2 at ¶ 12; see Docket #16 at 12-14. Paradise goes on to contend that his other claims are intertwined with the Wage Act claim such that none of his claims are subject to arbitration.

The parties have briefed these issues and, thus, practicality suggests addressing these

---

[5] Another material fact distinguishes this case from Campbell: the First Circuit considered whether the agreement to arbitrate ADA claims was "appropriate." This case presents no issue concerning the arbitrability of a federal statutory claim.

considerations, however, the ENCCA contains a forum selection clause designating Minnesota as the forum for all litigation between the parties. Paradise bears the burden of showing that enforcement of the clause "would be unreasonable and unjust, or that the clause was invalid for such reasons as fraud or overreaching." M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972). Courts look to a number of factors to determine whether the forum selection clause is reasonable, just and freely entered into. Reder Enterprises, Inc. v. Loomis, Fargo & Co. Corp., 490 F. Supp. 2d 111, 117 (listing factors). Paradise makes one argument in opposition to the forum selection clause – that the ENCCA's terms do not bind him. I recommend the Court reject this argument for the reasons noted above. Plainly, the clause is reasonable, just and, freely agreed to as the record is devoid of any evidence, or argument, to the contrary.

In light of the forum selection clause within the parties' binding agreement, I recommend that the Court transfer this action to the District of Minnesota for resolution of the remaining issues. A further reason supports transfer. A federal court may only compel arbitration in the district in which it presides. R.W. Electronics, Inc. v. Martin Wolf Associates, Inc., 132 F. Supp. 2d 43 (D. Mass.2001). Since the forum state in the ENCCA is Minnesota, the United States District Court for the District of Massachusetts cannot order arbitration. Accordingly, I recommend that the Court enforce the forum selection clause and transfer venue of this matter to the United States District Court for the District of Minnesota for consideration of Eagle Creek's request that the Court dismiss this case in favor of arbitration and Paradise's arguments to the contrary.

    3.       Defendant Behrendt

Behrendt is the President of Eagle Creek. He is not a formal party to the agreements

9

discussed above, thus Paradise contends that the claims against Behrendt should remain here. The Amended Complaint asserts a claim against Behrendt under the Massachusetts Wage Act statute, M.G.L. c. 149 §§ 148, 150. The Amended Complaint asserts the identical claim against Eagle Creek; moreover, the same allegations support his claim against both defendants. See Docket # 4 at ¶¶ 24-39, 46-50. In light of the overlap of these allegations arising out of the employment relationship between Paradise and Eagle Creek governed by the agreements discussed above, the interests of justice warrant transfer of the claim against Behrendt to Minnesota along with the claims against Eagle Creek. 28 U.S.C. § 1406. The Court in Minnesota may resolve whether the claim against Behrendt is subject to arbitration in the course of resolving the defendants' requests for dismissal in favor of arbitration.

III. Conclusion

Accordingly, I RECOMMEND that the Court ALLOW both motions to dismiss or transfer by transferring this action to the District of Minnesota.[6]  Docket # 11; Docket # 22.

          /s / Leo T. Sorokin
    UNITED STATES MAGISTRATE JUDGE

---

[6] The parties are hereby advised that any party who objects to these proposed findings and recommendations must file a written objection thereto within 14 days of receipt of this Report and Recommendation.  The written objections must identify with specificity the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Rule 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Keating v. Secretary of Health and Human Services, 848 F.2d 271 (1st Cir.1988); United States v. Emiliano Valencia-Copete, 792 F.2d 4 (1st Cir.1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603 (1st Cir.1980); United States v. Vega, 678 F.2d 376, 378-379 (1st Cir.1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir.1983); see also Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466 (1985).